**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DESALEGN SISAY, et al.** | ) | **CASE NO.  1:07 CV 3128** |
| | ) | |
| **PLAINTIFFS** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RICKY D. SMITH, et al.** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| **DEFENDANTS** | ) | |

This matter is before the Court upon the Motion of Plaintiffs, Desalegn Sisay ("Sisay"), Karmir Sing ("Sing"), Abdi Omar ("Omar"), Harjit Dhillon ("Dhillon") and Jasbir Rondhawa ("Rondhawa") and ABC Taxi, Airport Taxi, USA Taxi, and United Cab Company. (Dkt. #1).  Plaintiffs seek a preliminary injunction enjoining Defendant City of Cleveland from interfering with their right to provide outgoing taxicab service to pick up passengers at Cleveland Hopkins International Airport ("Hopkins"). Plaintiffs filed a Verified Complaint and Preliminary Injunction against Defendant City of Cleveland and Ricky D. Smith[1] pursuant to FED. R. CIV. P. 65 on November 11, 2007, and the Court held a Preliminary Injunction hearing on November 13, 2007.

---

[1] Plaintiffs orally moved to dismiss Defendant Bill Mullins at the Preliminary Injunction hearing.

**I.     FINDINGS OF FACT[2]**

The Parties stipulated to the following facts, unless otherwise noted. Defendant City of Cleveland issued a Request for Proposal ("RFP") in September 2006 for the purpose of receiving bids from taxicab companies for an exclusive concession to pick up passengers from Hopkins. The RFP contained minimum qualifications that the companies were required to meet before they would be considered for the RFP award. In order to be considered for the exclusive contract, the taxicab company must have had:

> A minimum of 7 continuous years of experience in the last ten years in operating and managing a public use taxicab service within a large metropolitan area or at a facility comparable in size to [Hopkins] on a twenty-four hour a day, 7 days a week basis. The service must have consisted of not less than 50 taxicabs traveling simultaneously while being under the control of a dispatcher and within the last 10 years must have at least seven years of experience in operating and managing a public use taxicab service with not less than one Million Dollars ($1,000,000) [gross revenue per year].

(Dkt. # 19).

The RFP contemplated an exclusive provider of outgoing taxicab service to pick up passengers at the queue at Hopkins. Defendant Ricky D. Smith, Director of Hopkins Airport, stated that the City of Cleveland created the RFP in response to a number of complaints about taxi service at the airport stemming from the large number of cabs waiting in the airport queue. The City of Cleveland felt that granting exclusive contracts to certain companies was the best way to regulate the number of taxis at Hopkins. Furthermore, Smith explained, the minimum qualifications established by the RFP were designed to

---

[2] The Court issues the following findings of fact for the limited and exclusive purpose of Plaintiffs' Motion for Preliminary Injunction. Such findings shall not be deemed as adjudicative on any other actions or claims arising out of the Complaint.

ensure that the cab companies had both experience and the financial capacity to provide dependable service. On September 11, 2006, Smith set up two separate meetings to inform the seven cab companies of the new minimum qualifications. First, Plaintiffs allege, Smith met with representatives from Yellow Cab, Ace, and Americab at 9:00 a.m. on September 11, 2006, without Plaintiff cab companies present. Smith then met with Plaintiff cab companies at 11:00 a.m. the same day to discuss the RFP.

Three taxicab companies -- Ace Taxi Service, Yellow Cab, and Americab -- submitted proposals in response to the RFP. None of the Plaintiffs met the above requirements and therefore did not submit a proposal. Plaintiff Omar, a first generation immigrant from Somalia, is the owner and president of USA Taxi. As of September 2006, USA Taxi was in business for four years, had approximately 37 cabs, and generated less than one million dollars a year in gross revenue. Plaintiff Sisay, a first generation immigration from Ethiopia, is the owner and president of ABC Taxi. As of September 2006, ABC Taxi was in business for three years, had approximately 35 cabs, and generated less than one million dollars a year in gross revenue. Plaintiff Dhillon, a first generation immigrant from Pakistan, is the sole owner of United Cab Company. As of September 2006, United was in business for six years, had approximately 35 cabs, and generated $664,000 per year in gross income. Plaintiff Singh, a first generation immigrant from India, is the owner of Airport Taxi. As of September 2006, Airport Taxi was in business for less than seven years, had 32 cabs, and generated less than one million dollars per year in gross income.

Patricia Singleton ("Singleton"), the Chief of Business Development for the City of Cleveland's Department of Port Control, was responsible for oversight and review of the RFP. Singleton did not, however, participate in the evaluation panel or have a vote regarding the award of the contract. The evaluation panel made a recommendation to Smith, communicated by Singleton, that Ace Taxi Service be selected as the exclusive provider of Hopkins airport outgoing taxicab pickup. The recommendation was then passed along to the Cleveland City Council.

On December 4, 2006, the Cleveland City Council heard testimony about the RFP and the provision of taxicab service to Hopkins from various parties. Patricia Singleton testified in favor of selecting Ace as the exclusive provider of outgoing taxicab services from Hopkins. Brian McBride ("McBride"), the owner of Yellow Cab company, asked the city to reconsider its decision to award Ace the exclusive right to transport passengers from Hopkins airport. According to Smith, the Cleveland City Council "in its wisdom," therefore passed an ordinance allowing him an option where he could appoint multiple carriers.

Ordinance 1781-A-06, commonly known as the "Hopkins Taxi Service Ordinance," authorized Smith to do any of the following:

> (1) Issue permits for taxicab companies to provide outbound services from Hopkins;
> (2) Enter into an agreement with a third-party taxi management concessionaire to manage outbound services; and
> (3) Issue permits at Hopkins or to enter into a concession agreement for the operation of an exclusive outbound taxicab concession at Hopkins.

4

The evaluation panel then interviewed the three bidders again, and recommended a prorated share of the taxi service-- Ace received 35 taxi permits, Yellow Cab received 25 taxi permits, and Americab received 15 taxi permits. The City of Cleveland did not give Plaintiff companies an opportunity to submit a bid at this time. Smith sent a letter dated October 4, 2007, to Gordon Friedman stating that the plan that is currently in place is the best plan for the airport, passengers, and City of Cleveland, and therefore the plan would not be changed. Therefore, as of October 9, 2007, Plaintiffs were no longer able to provide outbound taxi service from Hopkins. The instant Motion ensued.

## II. STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION

In determining whether to issue a preliminary injunction, the district court must consider: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." McPherson v. Michigan High Sch. Athletic Ass'n, 119 F.3d 453, 458 (6th Cir.1995). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." Six Clinics Holding Corp., II v. Cafcomp Systems, 119 F.3d 393, 400 (6th Cir.1997) (*citing* Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir.1994)). "No single factor will be determinative as to the appropriateness of equitable relief, . . . and the district court's weighing and balancing of the equities is overruled only in the rarest of cases." Id. (internal quotation marks and citations omitted). Finally, "[t]he purpose of a preliminary

5

injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Id.

### A. Likelihood of Success

#### 1. Section 1981 Discrimination Claim

In Counts II and III, Plaintiffs allege that Defendants' conduct interfered with their ability to contract for taxicab fares at the airport in violation of 42 U.S.C. § 1981. Section 1981 prohibits racial discrimination in making and enforcing contractual relationships. In order to prevail on a claim under the statute, a plaintiff must prove purposeful discrimination. See Patterson v. McLean Credit Union, 491 U.S. 164, 185-87 (1989). To establish a prima facie case of discrimination, Plaintiffs must first demonstrate that they are members of a protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992). Absent from both the Parties' motions and their oral arguments was a discussion of whether national origin is a protected class under Section 1981. In fact, Section 1981 has been held inapplicable to charges of discrimination on the basis of national origin. Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987). Although the language of Section 1981 could plausibly be interpreted to allow an individual of a particular national origin to sustain a discrimination claim if discriminated against on the basis of race, the facts in the instant matter do not support such a claim. Specifically, Plaintiffs could not establish a prima facie case of race discrimination because Ace is owned by a member of a protected class. Therefore, the Court finds that Plaintiffs have not demonstrated a likelihood of success on the merits with respect to their Section 1981 claim.

6

**2. Due Process Claim**

Plaintiffs also assert that the denial of their participation in the bidding for an award of the taxicab permits constitutes a violation of the Due Process clause. Procedural due process must be afforded before a state actor deprives a person of life, liberty, or property. Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Absent such interest, there is no obligation to provide due process prior to the state's action. Olim v. Wakinekona, 461 U.S. 238, 250 (1983); Roth, 408 U.S. at 569. Thus, the first question is whether Plaintiffs had a cognizable liberty or property interest that is being affected by the City's actions.

**a. Protected Property Interest**

To have a property interest in something, a person "must ... have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577. A license can be a property interest protected by due process, see, e.g., Mackey v. Montrym, 443 U.S. 1, 12-13, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979), including a license to operate a business. Goldrush II v. City of Marietta, 267 Ga. 683 (Ga. 1997)). For example, several courts have found a due process violation when a party was deprived of a previously granted status or property right. Baja Contractors v. Chicago, 830 F.2d 667 (7th Cir. 1987); Altenheim v. Turnock, 902 F.2d 582 (7th Cir. 1990); Magnum Towing & Recovery, LLC v. City of Toledo, 430 F. Supp. 2d 689, 697 (D. Ohio 2006).

Before Ace, Yellow Cab, and Americab were granted the exclusive right to provide outbound taxicab service from Cleveland Hopkins in October 2006, Plaintiffs' taxicab permits allowed them to provide such service. Plaintiffs, therefore, have established a

7

likelihood of showing that they had a protected property interest in providing outbound taxicab service because the City of Cleveland had conferred that benefit upon them.

### b. What Process is Due

The government may not deny a property interest without first giving the putative beneficiary an opportunity to present his claim of entitlement. "It has become a truism that 'some form of hearing' is required before the owner is finally deprived of a protected property interest." Logan v. Zimmerman Brush Co., 455 U.S. 422, 433, 71 L. Ed. 2d 265, 102 S. Ct. 1148 (1982). "What is fundamentally fair in terms of the form and time of the notice and hearing must of necessity depend on circumstances that will vary from case to case." Signet Constr. Corp. v. Borg, 775 F.2d 486, 490 (2d Cir. 1985). "In general, something less than a full evidentiary hearing is sufficient prior to adverse administrative action." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545 (1985).

A review of the record reveals that the procedure established by the City of Cleveland for soliciting bids for outbound taxi service from Hopkins did not contain many of the protections usually required before the loss of a protected property interest. Most compelling is the fact that Smith set up two separate meetings to inform the seven cab companies of the new minimum qualifications. First, Plaintiffs allege, Smith met with representatives from Yellow Cab, Ace, and Americab at 9:00 a.m. on September 11, 2006 without Plaintiff cab companies present. Smith then met with Plaintiff cab companies separately at 11:00 a.m. that day to discuss the RFP. Defendant Smith explained in the preliminary injunction hearing that he felt a separate meeting was necessary for the

8

minority owned cab companies because "minority owned businesses do not feel comfortable sharing some of the concerns and challenges that they have in the presence of majority business owners out of fear they may be black-balled or cast aside." However, the four companies that Smith met with separately were the four companies excluded from the contract.

The Court also notes that the minimum qualifications that the companies were required to meet before they would be considered for the RFP award- seven years experience, 50 cabs, and one million gross revenue per year- excluded every Plaintiff cab company included only those three companies that were present at the initial meeting. For example, the minimum qualifications for the RFP award precluded Plaintiff United, a company that was in business for six years, had approximately 35 cab drivers, and generated $664,000 per year in gross income, from bidding on the contract. Although the Court does not take issue with Defendants' desire to ensure that the taxi cab companies providing service at Hopkins are financially sound and reputable, the fact that the lines drawn excluded every cab company which was also excluded from the initial meeting with Smith is salient.

Furthermore, as Plaintiffs point out, the contract for outbound taxicab service was originally awarded to Ace exclusively. When Yellow Cab put pressure on the City of Cleveland after being denied the contract, however, the City of Cleveland reevaluated its decision and awarded both Yellow Cab and Americab contracts.[3] Plaintiff cab companies

---

[3] The Court notes that Defendants raised the issue of laches in both the hearing and the post hearing brief (Dkt. # 24), asserting that Plaintiffs should be barred from brining the instant case because Plaintiffs

9

were not given an opportunity to participate in the reevaluation of the City of Cleveland's initial decision to award the contract exclusively to Ace. Plaintiffs, therefore, have established a likelihood of showing that the procedures established by the City of Cleveland for the award of the contract were not adequate.

### B.    Irreparable Harm

In seeking a preliminary injunction, a party must make a clear showing of a significant threat that (1) an irreparable injury will result if relief is not granted, and (2) no other adequate legal remedy is available. City of Parma v. Levi, 536 F.2d 133, 135 (6th Cir. 1976). An injury is not fully compensable by money damages if the nature of the aggrieved party's loss would make damages difficult to calculate. Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992).

This Court agrees that preventing Plaintiffs from providing outbound taxi service from Hopkins will cause Plaintiffs to suffer irreparable harm if not a preliminary injunction is not granted immediately. For example, outbound fares from Hopkins comprised 90% of Plaintiff USA Taxi's business, and it was forced downsize from 37 drivers to 9 drivers after the exclusive contracts were awarded. Similarly, Plaintiff ABC Taxi downsized from 36 drivers in September 2006 to six drivers after the new system was implemented. This injury to Plaintiffs cannot be adequately ameliorated by money damages, and therefore the Court finds that Plaintiffs have demonstrated irreparable harm.

---

were made aware of the contract award on July 30, 2007. Testimony during the hearing, however, indicated that the City of Cleveland re-evaluated their initial decision to award the contract to Ace exclusively. Furthermore, the stipulated facts indicate that Gordon Friedman received a letter stating that the decision was final on October 4, 2007. The Court finds, therefore, finds that laches does not bar Plaintiffs' claims.

### C. BALANCING OF THE HARMS AND THE PUBLIC INTEREST

This Court turns now to an evaluation of (1) whether allowing Plaintiffs to pick up outbound passengers at Hopkins would cause substantial harm to others; and (2) if the public interest would be served by returning to the arrangement that existed before the exclusive contracts were awarded.

Defendants argue that a preliminary injunction would cause harm to Yellow Cab, Ace and Americab because they have already purchased the white vehicles as required by the contract with the City of Cleveland to be used for outbound cab service. Plaintiffs have agreed to purchase these vehicles from Yellow Cab, Ace, and Americab in the event that this Court grants the preliminary injunction, preventing those companies from incurring any unnecessary costs.

The Court further concludes that no harm will be caused to the general public or to the residents of the City of Cleveland if a preliminary injunction is granted in this litigation under these circumstances. Clearly, the public has a strong interest in protecting the Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution. Additionally, the public interest is always served when the constitutional rights of a citizen are vindicated.

### III. CONCLUSION

Based on the available record, this Court concludes that Plaintiffs have set forth sufficient evidence to justify the imposition of injunctive relief in this cause. Significantly,

Plaintiffs have sustained their burden of demonstrating a strong likelihood of success on the merits. Accordingly, the Court hereby orders the following:

(1) Plaintiffs' Motion for Preliminary Injunction (Dkt. #20) is **GRANTED**;

(2) A hearing will be held on Tuesday November 27, 2007, at 1:30 pm to determine the appropriate remedy.

**IT IS SO ORDERED.**

                                             **/s/ Peter C. Economus - November 20, 2007**
                                             **PETER C. ECONOMUS**
                                             **UNITED STATES DISTRICT JUDGE**